**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| THE HARTFORD MUTUAL INSURANCE COMPANY, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Case No.: SAG-20-2713 |
| HOVERZON, LLC d/b/a Swagtron, *et al.*, | * * * | |
| Defendants. | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff The Hartford Mutual Insurance Company as subrogee of Carriage Hill Associates L.P. ("Plaintiff") filed an Amended Complaint against Defendants Imedia Brands, Inc., Swagway, LLC ("Swagway"), Hoverzon, LLC d/b/a Swagtron ("Hoverzon"), and PC Direct, Inc., seeking compensation for property damage sustained as a result of an allegedly defective hoverboard catching fire. ECF 44. Defendant Hoverzon has filed a motion to dismiss the Amended Complaint for lack of personal jurisdiction. ECF 52. Plaintiff opposed the motion, ECF 61, and Hoverzon filed a reply, ECF 62. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons stated below, I shall defer Hoverzon's Motion to Dismiss pending jurisdictional discovery, which shall be conducted in accordance with the accompanying Order.

**BACKGROUND[1]**

Swagway sells and ships hoverboard products throughout the United States, directly and through retail sellers including Evine Live, Inc. ("Evine"). ECF 44 ¶¶ 3, 15, 16, 18. Swagway

---

[1] The facts are derived from the substantive evidence the parties submitted with respect to this motion, ECF 61-1, ECF 62-1, and from Plaintiff's Amended Complaint, ECF 44. This summary is limited to facts relevant to the determination of jurisdiction over Hoverzon.

"did not disclose that defects in its product could cause self-ignition or that its hoverboards were otherwise unreasonably dangerous." *Id.* ¶ 25. On or about November 13, 2015, Gerell Perrington, a Maryland resident, purchased a Swagway X1 Hoverboard from Evine, and gave it to his son, who lived in the Carriage Hill apartments in Suitland, Maryland. *Id.* ¶¶ 29, 49, 50. In late 2015 and early 2016, more information became public about hoverboard fires and explosions. *Id.* ¶¶ 28, 35-40. On February 17, 2016, UL LLC filed suit against Swagway for trademark infringement, alleging that Swagway had attempted to deceive the public into believing "that UL tested, inspected, and/or certified Swagway products." *Id.* ¶ 51. Two days later, on or about February 19, 2016, Swagway's principal shareholder formed Hoverzon, d/b/a Swagtron.[2] *Id.* ¶ 53. Hoverzon is a Nevada limited Liability Corporation with its principal place of business in Indiana. *Id.* ¶ 7.

On or about July 6, 2016, Swagway initiated a recall of its Swagway X1 Hoverboards, acknowledging 42 reported incidents of its battery packs "smoking, catching fire and/or exploding." *Id.* ¶¶ 62, 63. One option for customers participating in the recall was to request a $200 credit towards purchase of a Swagtron self-balancing scooter. ECF 61-1 at 7. Perrington did not receive notice of the recall. ECF 44 ¶ 66. On December 19, 2017, Perrington's hoverboard caught fire, causing severe damage to the Carriage Hill apartment complex's real and personal property, which was insured by Plaintiff. *Id.* ¶¶ 67, 69, 70.

## STANDARD

Hoverzon's Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) challenges this Court's personal jurisdiction. Under Rule 12(b)(2), the burden is "on the plaintiff ultimately to prove the

---

[2] While Hoverzon confirms that it sells some products under a licensed use of the Swagtron trademark, it does not seem to admit to "doing business as" Swagtron. *See, e.g.*, ECF 34-2 ¶ 4.

existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)). When "a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst of Md.*, 334 F.3d at 396 (citing *Combs*, 886 F.2d at 676). To determine whether the plaintiff has met this burden, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676. The court need not "look solely to the plaintiff's proof in drawing" all reasonable inferences in plaintiff's favor and may also look at the defendant's proffered proof and assertions regarding defendant's lack of contacts with the forum state. *Mylan Labs., Inc.*, 2 F.3d at 62. "When the existing record is inadequate to support personal jurisdiction over a defendant, the plaintiff is entitled to jurisdictional discovery if it can demonstrate that such discovery would yield 'additional facts' that would 'assist the court in making the jurisdictional determination.'" *FrenchPorte IP, LLC v. Martin Door Mfg., Inc.*, Civil Action No. TDC-14-0295, 2014 WL 4094265, at *5 (D. Md. Aug. 14, 2014) (first quoting *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005); and then citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (Fed. Cir. 2003) ("[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous.'")).

To exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute, pursuant to Federal Rule of Civil Procedure 4(k)(1)(A); and (2) the exercise of jurisdiction conforms to the

Fourteenth Amendment's due process requirements. *Carefirst of Md.*, 334 F.3d at 396. When interpreting the reach of Maryland's long-arm statute, a federal district court is bound by the interpretations of the Maryland Court of Appeals. *See Carbone v. Deutsche Bank Nat'l Tr. Co.*, Civil Action No. RDB-15-1963, 2016 WL 4158354, at *5 (D. Md. Aug. 5, 2016); *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130, 135-36 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985); *see also Mylan Labs.*, 2 F.3d at 61 (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 178 (1938)). Moreover, courts must address both prongs of the personal jurisdiction analysis, despite Maryland courts consistently holding that "the state's long-arm statute is coextensive with the limits of personal jurisdiction set out by the due process clause of the Constitution." *Bond v. Messerman*, 391 Md. 706, 721, 895 A.2d 990, 999 (2006); *see CSR, Ltd. v. Taylor*, 411 Md. 457, 472, 984 A.2d 492, 501 (2009) (noting that the personal jurisdiction analysis "entails dual considerations"); *Carefirst of Md.*, 334 F.3d at 396.

Under the first prong, the plaintiff must identify a provision in the Maryland long-arm statute that authorizes jurisdiction. *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). Under the second prong, "due process requires only that . . . a defendant . . . have certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milleken v. Meyer*, 311 U.S. 457, 463 (1940)). This "minimum contacts" analysis depends on the number and relationship of a defendant's contacts to the forum state, and whether the present cause of action stems from the defendant's alleged acts or omissions in the forum state. *Id.* at 316-19.

Finally, a court may exercise two types of personal jurisdiction, "general" or "specific." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773,

1780 (2017). "General" jurisdiction is a fairly limited concept, since it only arises where "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against [defendant] on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe*, 326 U.S. at 318. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). In the context of a corporation, the paradigm bases for general jurisdiction are "the place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The *Daimler* court clarified that while those paradigms are not necessarily the only bases for general jurisdiction, it would be "unacceptably grasping" to approve the exercise of general jurisdiction wherever a corporation, "engages in a substantial, continuous, and systematic course of business." *Id.* at 137-38 (declining to find general jurisdiction lies in every state in which a corporate defendant has "sizable" sales).

"Specific" jurisdiction arises when there is an "affiliation between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 919; *Carefirst of Md.*, 334 F.3d at 397. To assess specific jurisdiction, the Fourth Circuit considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

## ANALYSIS

Hoverzon argues that this Court does not have personal jurisdiction over it. ECF 52-1. The parties agree that this Court lacks general jurisdiction. ECF 61 at 8 ("Plaintiff does not contend

that Hoverzon is at home in Maryland."). However, Plaintiff argues that this court can exercise specific jurisdiction.

As grounds for the exercise specific personal jurisdiction over Hoverzon, Plaintiff has identified three provisions in Maryland's long-arm statute: Maryland Courts and Judicial Proceedings Article ("MJCP") § 6-103(b)(1) (transacting business), § 6-103(b)(2) (contracting to supply services, goods, or manufactured products in the state), and § 6-103(b)(4) (causing tortious injury by act or omission outside the state if deriving substantial revenue from "goods, food, services, or manufactured products used or consumed" in Maryland). ECF 61 at 9-10. Plaintiff contends that Hoverzon is a successor entity to Swagway and that it assumed a duty to warn Swagway's Maryland customers of the product defect. *Id.* at 8-9.

Plaintiff does not contend that Hoverzon, which was formed in 2016 after Perrington's hoverboard purchase, had any direct involvement in the sale of that item. Plaintiff's main contention, that Hoverzon "agreed to assume responsibility for providing notice of the X1 hoverboard's defective condition to Swagway, LLC's customers and handle the recall," ECF 44 ⁋ 64, is directly contested by Hoverzon. *See* ECF 62-1 ⁋ 2 (declaration from Hoverzon's authorized agent that "Hoverzon, LLC did not 'handle,' control, direct, oversee, monitor, or supervise the recall of the Swagway X1 Hoverboard."). Similarly, while Plaintiff alleges that Hoverzon is the successor in interest to Swagway and is thus liable for its acts and omissions, ECF 44 ⁋ 61, Hoverzon relies on public records establishing that "Swagway is a [sic] still a separate operating entity to this day," ECF 52-1 at 3, and on the declaration from its authorized agent attesting, "Hoverzon was not formed until 2016 and never acquired, through purchase, transfer, or otherwise, Swagway's assets and did not merge with Swagway."), ECF 34-2 ⁋ 7. The merits of each party's position are not obvious to the Court on the present evidentiary record, but Plaintiff's contentions

6

are not clearly frivolous given the alleged context in which Hoverzon/Swagtron was created and the other facially apparent overlaps it has with Swagway (for example, similar names, similar products sold, and same principal shareholder).  Moreover, the extent of Hoverzon's involvement in Swagway's recall should be relatively easy to establish, with some appropriately targeted discovery.  Similarly, whether Hoverzon has assumed Swagway's liabilities, has consolidated or merged with that entity, or is a mere continuation of Swagway should be readily ascertainable.  Finally, it should be easy to determine whether Swagway is a viable ongoing concern or a mere "assetless shell" such that a de facto merger may have occurred.

Accordingly, in the interest of judicial economy, this Court will order limited jurisdictional discovery from Hoverzon, pursuant to the terms outlined in the accompanying Order.  *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993) ("Discovery under the Federal Rules of Civil Procedure is, of course, broad in scope and freely permitted . . . [and] limited discovery may be warranted to explore jurisdictional facts").  After the limited jurisdictional discovery, Plaintiff will be permitted to file a supplemental submission regarding this Court's personal jurisdiction, and Hoverzon will be permitted an opportunity to reply.


Dated: February 9, 2021                                          /s/
                                                                        Stephanie A. Gallagher
                                                                        United States District Judge