IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| THE HARTFORD MUTUAL INSURANCE COMPANY, | * * * * |
| Plaintiff, | * * |
| v. | *  Civil Case No.: SAG-20-2713 |
| HOVERZON, LLC d/b/a Swagtron, et al., | * * * |
| Defendants. | * * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff The Hartford Mutual Insurance Company as subrogee of Carriage Hill Associates L.P. ("Plaintiff") filed an Amended Complaint against Defendants Imedia Brands, Inc., Swagway, LLC ("Swagway"), Hoverzon, LLC d/b/a Swagtron ("Hoverzon"), and PC Direct, Inc., seeking compensation for property damage sustained as a result of an allegedly defective hoverboard catching fire. ECF 44. Defendant Hoverzon has filed a Renewed Motion to Dismiss the Amended Complaint for lack of personal jurisdiction. ECF 113. Plaintiff opposed the motion, ECF 114, and Hoverzon filed a reply, 117. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons stated below, Hoverzon's Motion to Dismiss for lack of personal jurisdiction, ECF 113, will be denied.

I. **BACKGROUND**

The alleged facts in this case are set forth in detail in this Court's earlier Memorandum Opinions, ECF 66, 83, and will not be fully reiterated herein. This background section will be limited to a review of certain corporate history and the procedural history of the case.[1]

Three entities are relevant to the instant motion: Swagway, Hoverzon, and Zake IP Holdings LLC ("Zake IP"). The first entity, Swagway, was incorporated in Indiana by Jianqing Zhu on August 25, 2015. ECF 114-3 at 96. Within six months of its formation, Jerry Lin acquired a 40% interest in Swagway, such that Swagway was jointly owned by Zhu and Jerry Lin. ECF 114-7 at 2. The second entity, Hoverzon, was incorporated in Nevada on February 19, 2016, by Peggy Lin and Jerry Lin, the latter of whom was also, at the time, a 40% member of Swagway. ECF 113-1 at 5. Finally, Zake IP was incorporated in Indiana on March 29, 2016, by Zhu. ECF 114-3 at 89.

Swagway assigned its trademark, SWAGTRON, to Zake IP on April 6, 2016, roughly one week after Zake IP's incorporation (hereinafter referred to as "the Swagtron Asset"). ECF 77-1 at 78-79. Zhu executed the assignment agreement on behalf of Swagway in his capacity as Swagway member. ECF 77-1 at 78-79. No signature was provided for Zake IP, whose sole member, Zhu, had already signed the agreement on its counterparty's behalf. *Id.* There is no evidence that the assignment to Zake IP was supported by consideration. *See* ECF 117 at 2.

On June 9, 2017, Zhu purchased a 30% ownership interest in Hoverzon from Peggy Lin. ECF 113-2 at 8. The deal resulted in Hoverzon being owned by Zhu (30%), Peggy Lin (20%), and Jerry Lin (50%). *Id*. Three days later, on June 12, 2017, Zake IP granted Hoverzon a perpetual

---

[1] The facts are derived from substantive evidence the parties submitted with respect to this motion, ECF 113-1, 114-1, 117, and from prior briefings on the issue, ECF 52-1, 61, 62, 75, 77, 82.

license to the Swagtron Asset, for which Hoverzon paid a one-time, $1,000 fee.  ECF 113-2 at 4.  Zhu signed the licensing agreement on behalf of Zake IP, while Jerry Lin executed the agreement on behalf of Hoverzon.  *Id*. at 6.

In September, 2020, Plaintiff initiated suit against Defendants in this Court, alleging various state law claims for property damage allegedly caused by a Swagway hoverboard.  *See* ECF 44.  Hoverzon filed a motion to dismiss the Amended Complaint for lack of personal jurisdiction, ECF 52.  This Court deferred the motion pending jurisdictional discovery, ECF 66, 67.  After such discovery was concluded, this Court reviewed all relevant materials, *see* ECF 61, 62, 76, 77, 82, and denied Hoverzon's Motion to Dismiss, ECF 84.  In its Memorandum Opinion ("Opinion"), ECF 83, this Court concluded that the exercise of specific jurisdiction over Hoverzon was appropriate, based in part on provisions in Maryland's long arm statute covering business transactions and supplying goods in the state.  While acknowledging that Hoverzon itself did not sell the product at issue, personal jurisdiction nonetheless existed because "[j]urisdictional discovery has revealed information that suggests Hoverzon is a 'mere continuation' of Swagway, such that the Maryland rule against successor liability does not apply."  ECF 83 at 7.  Notwithstanding its determination, the Court preserved Hoverzon's right to re-raise its motion if evidence uncovered during discovery vindicated its status as an independent entity.  *Id.*  Hoverzon has now availed itself of that opportunity.

**II.   LEGAL STANDARDS**

Hoverzon's Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) challenges this Court's personal jurisdiction.  Under Rule 12(b)(2), the burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence."  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558

(4th Cir. 2014); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)).  When "a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst of Md.*, 334 F.3d at 396 (citing *Combs*, 886 F.2d at 676).  To determine whether the plaintiff has met this burden, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676.  The court need not "look solely to the plaintiff's proof in drawing" all reasonable inferences in plaintiff's favor and may also look at the defendant's proffered proof and assertions regarding defendant's lack of contacts with the forum state. *Mylan Labs., Inc.*, 2 F.3d at 62.

To exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute, pursuant to Federal Rule of Civil Procedure 4(k)(1)(A); and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements. *Carefirst of Md.*, 334 F.3d at 396.  When interpreting the reach of Maryland's long-arm statute, a federal district court is bound by the interpretations of the Maryland Court of Appeals.  *See Carbone v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 4158354, at *5 (D. Md. Aug. 5, 2016); *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130, 135-36 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985); *see also Mylan Labs.*, 2 F.3d at 61 (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 178 (1938)).  Moreover, courts must address both prongs of the personal jurisdiction analysis, despite Maryland courts consistently holding that "the state's long-arm statute is coextensive with the limits of personal jurisdiction set out by the due process clause of the Constitution." *Bond v. Messerman*, 391 Md. 706, 721 (2006); *see CSR, Ltd.*

*v. Taylor*, 411 Md. 457, 472 (2009) (noting that the personal jurisdiction analysis "entails dual considerations"); *Carefirst of Md.*, 334 F.3d at 396.

Under the first prong, the plaintiff must identify a provision in the Maryland long-arm statute that authorizes jurisdiction. *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). Under the second prong, "due process requires only that . . . a defendant . . . have certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milleken v. Meyer*, 311 U.S. 457, 463 (1940)). This "minimum contacts" analysis depends on the number and relationship of a defendant's contacts to the forum state, and whether the present cause of action stems from the defendant's alleged acts or omissions in the forum state. *Id.* at 316-19.

Finally, a court may exercise two types of personal jurisdiction, "general" or "specific." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). "General" jurisdiction is a fairly limited concept, since it only arises where "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against [defendant] on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe*, 326 U.S. at 318. In the context of a corporation, the paradigm bases for general jurisdiction are "the place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). "Specific" jurisdiction arises when there is an "affiliation between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 919; *Carefirst of Md.*, 334 F.3d at 397. To assess specific jurisdiction, the Fourth Circuit considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether

5

the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

## III.   DISCUSSION

Maryland defines successor corporations to include "[a] vendee, lessee, or other transferee in a transfer of assets." Md. Code Ann., Corps. & Ass'ns § 1-101(dd); *see also Baltimore Luggage Co. v. Holtzman*, 80 Md. App. 282, 290 (1989). A requisite transfer of assets sufficient to create a successor corporation includes "any sale, lease, exchange or other transfer of all or substantially all of the assets of a corporation." *Baltimore Luggage Co.*, 80 Md. App. at 290; *see also* Md. Code Ann., Corps. & Ass'ns § 1-101(ee). Ordinarily, a successor corporation is not liable for the debts and liabilities of its predecessor. *Baltimore Luggage Co.*, 80 Md. App. at 290. This general rule, however, is subject to exception where "the purchasing corporation is a mere continuation of the selling corporation . . ." *Id.* (citing *Golden State Bottling Co. v. National Labor Relations Board*, 414 U.S. 168, 182-83 n.5, (1973)). Under Maryland law, courts look to five factors to assess whether a successor corporation is a "mere continuation" of a preceding entity: "(1) any change in ownership and management, (2) the continued existence of the selling corporation, (3) the adequacy of consideration, (4) the transfer of any 'instrumental' employees from the predecessor to the successor, and (5) the purpose of the asset sale." *Martin v. TWP Enterprises Inc.*, 227 Md. App. 33, 60 (2016) (internal citations omitted).

In its Opinion, this Court concluded that Hoverzon was appropriately considered a successor corporation to Swagway, in light of Hoverzon's acquisition of the Swagtron Asset through an intermediary entity, Zake IP. ECF 83 at 8. Next, the Court determined that three of the five applicable considerations—change in ownership and management, continued existence of

6

the selling corporation, and the apparent purpose of the asset transfer—suggested that Hoverzon is a mere continuation of Swagway, whereas the remaining two factors were presently indeterminable. *Id.* at 10-11 (applying five-factor analysis enumerated in *Martin*, 227 Md. App. at 60, and noting a lack of evidence as to the adequacy of consideration of the transfer, or the transfer of instrumental employees). This Court observed there were several outstanding ambiguities as to the relationship between Swagway and Hoverzon:

> For example, when, precisely, did Zhu take on his role as member of Hoverzon and when did he leave his leadership role in Swagway? What sort of consideration did Zake IP give Swagway in exchange for the Swagtron [Asset] and, similarly, what consideration did Hoverzon subsequently provide Zake IP for it? Is Swagway presently an assetless shell?

*Id*. at 11. This Court stipulated that Hoverzon could renew its objection should the discovery process unearth evidence relevant to these or other issues, which demonstrated that it is not a mere continuation of Swagway. *Id.*

Purporting to present new evidence responsive to the illustrative questions posed in its Opinion, Hoverzon now renews its objection to this Court's exercise of personal jurisdiction. Specifically, Hoverzon asserts that it is not a mere continuation of Swagway because: (1) it merely licensed the Swagtron Asset, and paid consideration to do so; (2) Zhu was not, at all times, a Hoverzon member; and (3) Swagway existed in 2016 and 2017. This Court finds none of Hoverzon's arguments meritorious, and will address them each in turn.[2]

---

[2] Because this Court concludes, on the present record, that Plaintiff has met its burden of showing that Hoverzon is a "mere continuation" of Swagway, it does not reach the alternative questions of whether Hoverzon assumed responsibility for the hoverboard recall, *see* ECF 117 at 6, or whether Swagway's transfer of the Swagtron Asset was improper or made in bad faith, ECF 114-1 at 6, 19.

### A. The Swagtron Asset

Hoverzon first argues that it cannot be considered a successor corporation—and thereby a mere continuation—of Swagway merely because it licensed a single asset, the Swagtron Asset, from Zake IP. ECF 113-1 at 3. Hoverzon's insistence on this point is largely an attempt to relitigate arguments that were previously raised, considered, and rejected by this Court. *See, e.g.*, ECF 83 at 8. To the extent that Hoverzon's motion seeks reconsideration of this Court's Opinion and Order, ECF 83, 84, it is subject to dismissal as untimely, *See* Loc. R. 105.10., improper, and falling far below the threshold that would justify reconsideration in any event. *See Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018) (although court may revise an order "to correct a clear error of law or prevent manifest injustice . . . a motion to reconsider is not a license to reargue the merits or present new evidence that was previously available to the movant.") (internal citations omitted).[3]

Hoverzon also provides supplemental evidence[4] showing that its agreement to license the Swagtron Asset from Zake IP was supported by $1,000 consideration. *See Martin*, 227 Md. App. at 60 (including adequacy of consideration as one of the five factors in a "mere continuity" analysis). Hoverzon's argument falls short, however, insofar as it merely establishes the existence of consideration, not that the consideration was adequate or sufficient for the assets exchanged. *See id.* (specifying that consideration must be adequate); *Acad. of IRM v. LVI Env't Servs., Inc.*,

---

[3] Hoverzon's argument that there was no transfer of assets because it "never actually acquired ownership of the Swagtron [A]sset through any purchase," ECF 113-1 at 3, is similarly improper and, in any event, unsupported by Maryland law. *See* Md. Code Ann., Corps. & Ass'ns § 1-101(ee) (defining "transfer of assets").

[4] This Court notes that much of the "new evidence" presented by Hoverzon consists of documents or records that have presumably been in its possession, or to which it has had access, since the commencement of this case. *See, e.g.*, ECF 113-1 at 3 (trademark licensing agreement to which Hoverzon is a party); *id.* at 5-6 (agreement to purchase Hoverzon shares).

344 Md. 434, 456 (1997) ("insufficient consideration running to the seller from the purchaser corporation" is a key element in the mere continuity analysis (quoting *Uni-Com Nw., Ltd. v. Argus Pub. Co.*, 47 Wash. App. 787, 804 (1987))). Hoverzon obtained a perpetual license of the Swagtron Asset for $1,000 from Zake IP, an entity which, in turn, was assigned the Swagtron Asset for no demonstrable consideration. Hoverzon provides no evidence that would permit this Court to infer that Swagway received full value for the Swagtron Asset, or that Hoverzon's $1,000 payment is demonstrative of an arm's length transaction. *Contra Nissen Corp. v. Miller*, 323 Md. 613, 615 (1991).

### B. Overlapping Management

Next, Hoverzon attacks this Court's conclusion that the overlapping membership of the two entities indicates that Hoverzon is a mere continuation of Swagway. In support of its position, Hoverzon asserts that:

> Hoverzon was formed in February 2016 by Peggy Lin and Jerry Lin. Zhu was not involved in that formation . . . Swagway assigned its interest in the Swagtron [A]sset to Zake IP Holdings in April 2016 . . . To address the Court's question [regarding when Zhu became a Hoverzon member], Zhu did not become involved with Hoverzon until nearly a year and a half later when he purchased Hoverzon shares in June 2017.

ECF 113-1 at 4-5.

Hoverzon's emphasis—that Zhu, specifically, did not at all times own and manage both entities—obscures the relevant inquiry. The mere continuity analysis is concerned with whether an entity obtains assets from a corporation with which it shares the same or similar ownership and management. *See Baltimore Luggage*, 80 Md. App. at 297 (The mere continuity exception is designed to prevent a situation whereby "[i]n other words, the purchasing corporation maintains the same or similar management and ownership but wears a 'new hat.'"). And on this point, the new evidence proffered by Hoverzon undermines, rather than strengthens, its own position. At

the time Hoverzon obtained the Swagtron Asset, Zhu was a member of Swagway,[5] Zake IP, and Hoverzon, having purchased 30% ownership in the latter entity only three days prior.[6] Indeed, Zhu acted as the representative of the transferor entity in both Swagway's initial assignment of the Swagtron Asset to Zake IP, and Zake IP's license of the Swagtron Asset to Hoverzon. *See* ECF 77-1 at 78-79 (Zhu, on behalf of Swagway, executing assignment of Swagtron Asset to Zake IP); ECF 113-2 at 6 (Zhu, on behalf of Zake IP, executing license of Swagtron Asset to Hoverzon). Simply put, Swagway's majority owner purchased a significant stake in Hoverzon, and then, days later, signed a deal granting Hoverzon's perpetual use of the Swagtron Asset. The chronology of the overlapping members' involvement with the two entities supports a finding that Hoverzon is merely a continuation of Swagway.

### C. Swagway's Continuation

Finally, Hoverzon offers Swagway's 2016 financial statements to support its proposition that "Swagway existed, and was certainly a viable corporation to be sued, after it sold the Swagtron [A]sset in 2016," such that the two should be considered separate and distinct entities. ECF 113-1 at 6 (citing *Baltimore Luggage*, 80 Md. App. at 297 (observing that "only one corporation in

---

[5] This Court queried, "[f]or example, when, precisely, did Zhu take on his role as member of Hoverzon and when did he leave his leadership role in Swagway?" ECF 83 at 11. Hoverzon answers only the former question. Despite Hoverzon's silence on the latter issue, it appears that Zhu was a member of both Swagway and Hoverzon on June 12, 2017, when Hoverzon received the Swagtron Asset. *See* ECF 114-3 at 96 (Swagway business entity report executed on September 8, 2017, by Zhu as Swagway principal and manager).

[6] Hoverzon's unwavering focus on Zhu also obfuscates the fact that, since Hoverzon's incorporation, the two entities have shared at least one common owner and manager: Jerry Lin. At its formation in February, 2016, Jerry Lin, owned 50% of Hoverzon, and 40% of Swagway. This is contrary to Hoverzon's earlier representations that Jerry Lin was not a Swagway member when he incorporated Hoverzon with Peggy Lin. *See* ECF 114-1; ECF 114-7.

existence after the completion of the sale of assets" is an indicia of mere continuity)); ECF 117 at 6. Hoverzon's argument fails for several reasons.

First, Hoverzon's assertion that Swagway "sold the Swagtron [A]sset in 2016" is not credible. *Id.* While it is true that Swagway assigned the Swagtron Asset to Zake IP—an entity with whom it shared members—in April 2016, there does not appear to have been a "sale" insofar as there is no evidence that Swagway charged any price, or received any value, in return for the asset. *See* ECF 117 at 2-3 (conceding that "the parties, including Hoverzon and Swagway, have been unable to find documentation of the specific consideration despite the documented assignment of the trademark from Swagway to Zake IP Holdings."). The contention that Swagway sold the Swagtron Asset in 2016 is also subverted by evidence suggesting that Swagway continued to freely use the Swagtron Asset after the April 2016 assignment. *See* ECF 114-1 at 4-5. Second, and relatedly, Hoverzon confuses the relevant time period at which Swagway's continued existence is judged. As Hoverzon itself asserts, the analysis looks at whether "only one corporation is in existence after the *completion* of the sale of assets." ECF 113-1 at 6 (quoting *Baltimore Luggage*, 80 Md. App. at 297) (emphasis added). Here, the completion of the sale of assets to Hoverzon occurred on June 12, 2017. ECF 113-2 at 3. Accordingly, Hoverzon's insistence that Swagway was viable in 2016—when Swagway initiated an intermediary assignment of the Swagtron Asset to Zake IP—is wholly beside the point.

Finally, Hoverzon's reference to Swagway's 2017 financial statements does not shed new light on Swagway's continuing existence, nor does it alter this Court's earlier conclusion that "while Swagway continues to exist in name, it does not have any substantive operations." ECF 83 at 10. Rather, the 2017 financial statements, reporting a net income of -$7.7 million, are consistent with this Court's initial estimation of Swagway as functionally paralyzed by a series of

legal setbacks and product failures. *See id*. Hoverzon's contention—that the 2017 financial statements demonstrate Swagway's continued existence insofar as they show that Swagway remained capable of being sued—is similarly unpersuasive. ECF 113-1 at 7. As Hoverzon itself observes, Swagway's legal battles were brought to the attention of, and considered by, this Court, before the issuance of its initial Opinion. *See id*. This Court rejected the contention that Swagway's extensive legal troubles preclude a finding that Hoverzon is a mere continuation. This motion is not an appropriate mechanism to relitigate that position. Moreover, new evidence of Swagway's precarious financial position only provides further support for the inference that "the purpose of this [Swagtron Asset] transfer was to continue Swagway's functional operations under a different name and protect the Swagtron brand while insulating it from looming liability." ECF 83 at 11. Thus, none of the new evidence cited by Hoverzon supports its view, and this Court reaches the same result in considering its exercise of personal jurisdiction.

## IV.   CONCLUSION

For the reasons set forth above, Hoverzon's Renewed Motion to Dismiss, ECF 113, is denied. A separate Order follows.

Dated: November 8, 2021 /s/
Stephanie A. Gallagher
United States District Judge